UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | SA-22-CR-250-OLG |
| § | |
| PRINCE BENJAME BUTLER, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion to Dismiss Charges Under 18 U.S.C. § 922(g)(1). (Docket Entry 119.) The motion has been referred to the undersigned for consideration and recommended disposition. (Text Order: January 31, 2025.) I have authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). For the reasons set out below, I recommend that the motion (Docket Entry 119) be **DENIED**.

**I.    Background.**

On May 18, 2022, a federal grand jury indicted Defendant Prince Benjame Butler for one count of violating 18 U.S.C § 922(g)(1). (Docket Entry 16.) "Section 922(g)(1) is known as the felon-in-possession statute." *United States v. French*, 121 F.4th 538 (5th Cir. 2024). It prohibits any person convicted of "a crime punishable by imprisonment" for more than one year—*i.e.*, a felony—from possessing "any firearm or ammunition." *Id.* (quoting 18 U.S.C. § 922(g)(1)). Butler now moves to dismiss his indictment, arguing that § 922(g)(1) violates the Second Amendment, both facially and as applied to the specific facts and circumstances of his offense.

(Docket Entry 119, at 1.) He also argues that § 922(g)(1) is unconstitutional inasmuch as Congress exceeded its authority under the Commerce Clause when it enacted the law. (*Id.*)

Butler concedes that his facial Second Amendment and commerce-clause challenges are foreclosed by Fifth Circuit precedent. (Docket Entry 119, at 1, 9–11.) He is correct. *See United States v. Diaz*, 116 F.4th 458, 471–72 (5th Cir. 2024) ("To sustain a facial challenge, the challenger must establish that no set of circumstances exists under which the statute would be valid, . . . . [which] Diaz cannot do, because the statute is constitutional as applied to the facts of his own case.") (citations and internal quotation marks omitted); *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013) ("[W]e have consistently upheld the constitutionality of § 922(g)(1) . . . . [as] a valid exercise of Congress's authority under the Commerce Clause.") (citations omitted). Accordingly, this Report and Recommendation will address Butler's as-applied challenge to the constitutionality of § 922(g)(1).

**II.    Legal Standard.**

The Second Amendment "protects the right of individuals to 'keep and bear' firearms for their self-defense." *United States v. Daniels*, 124 F.4th 967, 972 (5th Cir. 2025) (citing U.S. CONST. AMEND. II.; citing *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008)). "Like most rights," however, "the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* Still, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *United States v. Quiroz*, 125 F.4th 713, 716 (5th Cir. 2025) (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022)). A regulation of such presumptively protected conduct will therefore run afoul of the Second Amendment unless the Government "demonstrate[s] that the regulation is consistent with

[the] Nation's historical tradition of firearm regulation." *Quiroz*, 125 F.4th at 716–17 (quoting *Bruen*, 597 U.S. at 17).

This historical analysis is "not meant to suggest a law trapped in amber." *United States v. Rahimi*, 602 U.S. 680, 691 (2024). "[T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Id.* at 691–92. At the appropriate level of generality, the question is "whether the challenged regulation is consistent with the principles that underpin our [Nation's] regulatory tradition." *Id.* at 692. "Why and how the regulation burdens the right are central to this inquiry." *Id.* That is to say, the challenged and historical laws "must both (1) address a comparable problem (the 'why') and (2) place a comparable burden on the right holder (the 'how')." *United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) (citing *Rahimi*, 602 U.S. at 692; *Bruen*, 597 U.S. at 27–30). In other words, the "analogue must exhibit similarity both as to the *type* and *purpose* of the punishment." *United States v. Patino*, No. 24-CR-60-DC, 2024 WL 5010146, at *5 (W.D. Tex. Nov. 26, 2024). "Deciding whether a conceptual fit exists between the old law and the new requires . . . both analogical reasoning and sound judgment." *Connelly*, 117 F.4th at 274 (citing *Rahimi*, 602 U.S. at 690–92.).

**III.    Discussion.**

The Government does not dispute that, given the current state of the law in this Circuit, the plain text of the Second Amendment is considered to "cover[] the conduct prohibited by § 922(g)(1)." *Diaz*, 116 F.4th at 467. Accordingly, the Government must demonstrate that applying § 922(g)(1) to Butler is "consistent with the principles that underpin" the Nation's historical tradition of firearm regulation. *Rahimi*, 602 U.S. at 692; *see Diaz*, 116 F.4th at 467.

A felony was understood during the founding era as "an offence which occasions a total forfeiture of either lands, or goods, or both, . . . and to which capital or other punishment must be

superadded, according to the degree of guilt."  4 W. BLACKSTONE, COMMENTARIES *95 (1st ed. 1769).  "The idea of felony [wa]s so generally connected with that of capital punishment," that founding-era Americans would have found it "hard to separate them."  *Id.* at *98.  Indeed, "death was 'the standard penalty for all serious crimes' at the time of the founding."  *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019) (quoting STUART BANNER, THE DEATH PENALTY: AN AMERICAN HISTORY 23 (2002)); *see Tennessee v. Garner*, 471 U.S. 1, 13 (1985) (noting that "virtually all felonies were punishable by death" at the time of the founding); 4 W. BLACKSTONE, COMMENTARIES *98 (noting that founding-era executions of felons were so ubiquitous that, "if a statute ma[d]e any new offence a felony, the law implie[d] that it shall be punished with death . . . as well as with forfeiture. . . .").

Where the same offense today would have been punishable at the founding with death or permanent estate forfeiture, then permanent disarmament under § 922(g)(1) based on a conviction for that offense does not run afoul of the Second Amendment.  *See Rahimi*, 602 U.S. at 699 (holding that lesser punishment of temporary disarmament was permissible where greater punishment of imprisonment was permitted at the founding for analogous offenses); *Diaz*, 116 F.4th at 469 (holding permanent disarmament consistent with Second Amendment where "at least one of the predicate crimes that [a defendant's] § 922(g)(1) conviction relies on . . . was a felony [at the founding] and thus would have led to capital punishment or estate forfeiture").  Of course, "[m]any crimes classified as misdemeanors, or nonexistent, at common law are now felonies."  *Diaz*, 116 F.4th at 468 (quoting *Garner*, 471 U.S. at 13).  Thus, "[t]he fact that [Butler] is a felon today . . . does not necessarily mean that he would have been one in the 18th century."  *Diaz*, 116 F.4th at 469 (*mutatis mutandis*).  Accordingly, the undersigned must determine whether Butler's

predicate offenses under § 922(g)(1) are sufficiently analogous to offenses which were considered felonies at the founding, and thus punishable by death or estate forfeiture.

As identified by the Government, Butler's pertinent criminal history consists of two separate felony convictions for possession of controlled substances, TEX. HEALTH & SAFETY CODE § 481.115 (Docket Entry 123-1, at 1, 11; Docket Entry 123-3, at 1), and one felony conviction for retaliation, TEX. PENAL CODE § 36.06 (Docket Entry 123-2, at 1).[1] Considered either separately or together, these convictions meet the historical test necessary to defeat an as-applied Second Amendment challenge.

The Government analogizes Butler's drug-possession convictions to founding-era felonies of possession of illicitly obtained goods. (Docket Entry 123, at 11–13.) For instance, the Government points out that founding-era Virginia authorized the death penalty for knowingly receiving a stolen horse. (*Id.* at 11–12 (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, at 130 (1819)).) The Government further points out that the founding-era Congress authorized the death penalty for theft of mail, counterfeiting, and forgery. (Docket Entry 123, at 12 (citing *An Act to Establish the Post Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792); *An Act for the Punishment of Certain Crimes Against the United States*, § 115, 1 Stat. 112, 115 (1790)).) And finally, the Government points out that founding-era New York punished counterfeiting with complete estate forfeiture, a life sentence, and by branding the

---

[1] "For purposes of assessing [Butler's] predicate offenses under § 922(g)(1)," the Court may only consider "prior *convictions* that are 'punishable by imprisonment for a term exceeding one year.'" *See Diaz*, 116 F.4th at 467 (emphasis added). Given this focus on convictions, the Court need not consider the Government's evidence that Butler may have committed several more crimes than those for which he was actually charged or convicted. (*See* Docket Entry 123, at 3–6.)

5

offender's cheek with a "C" to prevent escape.  (Docket Entry 123, at 12 (citing 2 *Laws of the State of New York Passed at the Session of the Legislature* (1775–1788) at 260–61 (1886)).)

At least one district court in this circuit has already held that a felony possession of marijuana is sufficiently analogous to the founding-era felony of "possession of illicitly obtained goods."  *Patino*, 2024 WL 5010146, at *6.  Seeing no meaningful distinction between that case and this one, the undersigned finds that "the [f]ounding-era laws cited by the Government qualif[y] as 'relevantly similar' evidence, . . . 'establish[ing] that our country has a historical tradition of severely punishing people like [Butler] who have been convicted' of possessing contraband."  *Patino*, 2024 WL 5010146, at *6.  Accordingly, § 922(g)(1) is constitutional as applied to a defendant who, like Butler, has been convicted of the felony of possession of a controlled substance.  *See id.*

The Government also analogizes disarming Butler under § 922(g)(1) for his felony retaliation conviction to founding- and Reconstruction-era laws, like going-armed and surety laws, which permitted the disarming of dangerous people.  (Docket Entry 123, at 13–21.)  As the Supreme Court made clear in *Rahimi*, the surety and going-armed laws, when taken together, establish the following principle which underpins our nation's tradition of firearm regulation: "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."  602 U.S. at 698.  Butler's felony retaliation conviction comports with disarmament under this principle in that it required that he "intentionally or knowingly harm[ed] or threaten[ed] to harm another by an unlawful act."  TEX. PENAL CODE § 36.06(a).[2]

---

[2] Butler's felony drug convictions also comport with the principle of disarming dangerous people. *See Patino*, 2024 WL 50100146, at *6 ("Congress has long recognized 'that drugs and guns are a dangerous combination.'") (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993) (citing statistics on the percentage of murders relating to the drug trade))).

Thus, the principle set out in *Rahimi*—that individuals may be disarmed when the pose a clear threat of physical violence to others—further confirms that § 922(g)(1)'s application to Butler does not offend the Second Amendment.

Finally, the Government demonstrates a historical tradition of punishing repeat offenders with death. (Docket Entry 123, at 24–25.) For instance, founding-era laws from New York, New Hampshire, and Virginia authorized the death penalty for any second felony conviction, a second burglary conviction, or a third conviction for stealing a hog, respectively. (*Id.* (citing Act of Feb. 21, 1788, Ch. 37, 1788 N.Y. Laws 664–65; Act of June 14 1701, Ch. 7, 1702 Laws of New Hampshire 678, 794; *Quiroz*, 125 F.4th at 720 (citing LAWRENCE M. FRIEDMAN, CRIME AND PUNISHMENT IN AMERICAN HISTORY 42 (1993)).) Butler is a repeat offender, having been convicted twice of felony drug possession and once for felony retaliation. The founding-era tradition of executing repeat felony offenders is in itself sufficient to satisfy the Government's burden and defeat Butler's Second Amendment challenge.

## IV.   Conclusion and Recommendation.

Based on the foregoing, § 922(g)(1) is constitutional—both facially and as applied to Butler. Furthermore, Congress acted within its legitimate authority under the commerce clause in enacting § 922(g)(1). Accordingly, each of Butler's arguments for dismissing his indictment fail. I therefore recommend that Butler's Motion to Dismiss Charges Under 18 U.S.C. § 922(g)(1) (Docket Entry 119) be **DENIED**.

## V.   Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified

mail, return receipt requested. Written objections to this Report and Recommendation must be filed within **fourteen (14) days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. Absent leave of Court, **objections are limited to twenty (20) pages in length**. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on March 3, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge